**EXHIBIT A**

STATE OF NORTH CAROLINA
COUNTY OF CATAWBA

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CVS000955-170

DOVER SUB 1, LLC, RRAIT SUB 1, LLC, MERCHANT'S SUB 1, LLC, and HAWKS LANDING OWNER, LLC,

Plaintiffs/Counter-Defendants,

v.

HAWKS NOTE PURCHASE, LLC,

Defendant/Counter-Plaintiff,

and

MAXMEZ NC, LLC,

Proposed Intervenor-Plaintiff,

and

MERCHANT'S WALK APARTMENTS, LLC and HAWKS PVO, LLC,

Proposed Intervenor-Defendants,

and

HAWKS PVO HOLDING, LLC, and MERCHANT'S HOLDING 1, LLC,

Nominal Defendants.

**DECLARATION OF ELIEZER MEISELS**

**COMES NOW**, the Declarant, Eliezer Meisels, and would state and declare as follows:

1. My name is Eliezer Meisels, and I am an adult resident of the State of New Jersey.

2. I am the CEO and co-founder of Valor Residential Group, LLC.

3. I am also a Member in, and representative agent for, the Plaintiff entities Dover Sub 1, LLC, Merchant's Sub 1, LLC, RRAIT Sub 1, LLC, and Hawks Landing Owner, LLC ("Plaintiffs").

4. I retained legal counsel to bring the original March 24, 2025 Complaint (which was amended on September 15, 2025), seeking, among other things, injunctive relief arising from Defendant Hawks Note Purchase, LLC's ("HNP") failure and refusal to provide Plaintiffs with a payoff statement for a loan —originally issued by Regions Bank in June 2022 in the principal amount of $19,700,000.00 concerning the Hawks Landing Apartment Complex ("Hawks Landing") — but subsequently purchased by HNP on February 14, 2025 (the "Loan"). HNP overpaid for the Regions loan by $96,250.00 for "Other Fees" that were never supported or due.

5. At the time HNP purchased the Loan from Regions Bank (or shortly after), HNP filed multiple lawsuits against Plaintiffs.

6. In part, because of HNP's multiple (and malicious) prosecutions, Plaintiffs decided to pay off HNP's Loan. Plaintiffs secured a bridge loan in an amount sufficient to pay off HNP.

7. Beginning on February 18, 2025, and not less than 10 times thereafter, Plaintiffs requested that HNP provide Plaintiffs with a payoff statement so that Plaintiffs could pay off the Loan and resolve *all* the pending litigation.

8. HNP refused to provide Plaintiffs with a payoff statement.

9. During this same period of time, a person who was previously undertaking purchase due diligence on Hawks Landing agreed to purchase the Property from Plaintiffs. Without a payoff from HNP, however, Plaintiffs could neither pay off the Loan themselves with the bridge loan, nor sell Hawks Landing. HNP was effectively, and strategically, prosecuting claims under the HNP Loan while simultaneously refusing to allow Plaintiffs to pay off the Loan.

10. After requesting a payoff not less than 10 times and embroiled in newly filed litigation seeking emergency *ex parte* temporary restraining orders and injunctions, Plaintiffs filed suit seeking to compel HNP to provide the payoff statement as required by statute and recover damages from HNP for the losses and damages they suffered.

11. On March 24, 2025, Plaintiffs filed their Emergency Motion seeking a temporary restraining order ("TRO") and injunction asking the Court to compel HNP to provide Plaintiffs with a standard, useable, payoff statement. HNP, again, refused to provide the payoff statement and, instead, sought to defend the Emergency Motion in an effort to defeat the requested TRO. On March 26, 2025, the Court granted the TRO and required that HNP, within 10 days of the oral order, provide Plaintiffs with a payoff amount, without penalties, interest, or other fees – including attorney's fees.

12. Pursuant to the TRO, the Payoff amount should have been no more than $20,846,520.92.

13. Despite the TRO, however, HNP failed and refused to provide a useable payoff statement in line in accordance with the TRO and the parties proceeded to the preliminary injunction hearing.

14. On April 7, 2025, the parties appeared before the Catawba County Superior Court for the preliminary injunction hearing. After lengthy argument and on the record, the parties agreed on terms to resolve the dispute underlying the preliminary injunction. The basic framework of that agreement, as memorialized in the jointly drafted Order Granting Plaintiffs' Motion for Preliminary Injunction (entered on April 7, 2025), was that Plaintiffs were to proceed with closing the sale of Hawks Landing to the buyer.

15. The proceeds from the sale of Hawks Landing included $1,011,505.66 above the approved payoff, which belonged to Plaintiffs. Nevertheless, as part of the agreement and Order Granting Plaintiffs' Motion for Preliminary Injunction, Plaintiffs agreed to pay into the Clerk of Court, the payoff amount of $20,846,520.92, plus the additional $1,011,505.66, and per diem interest at the rate of $6,058.37, beginning April 6, 2025, though the date of the deposit.

16. Upon closing, Plaintiffs paid into the into the Clerk of Court the total sum of $21,894,377.07.

17. The parties agreed that the $21,894,377.07 (the "Funds"), would be held in the Clerk of Court's escrow account until a final determination of the merits of this case.

18. After agreeing to the settlement framework and after jointly drafting the Order, HNP's counsel asked the Court to change the agreed upon framework. Instead of leaving the Funds with the Clerk of Court until a final determination of the merits of this case, HNP demanded that $20,846,520.92 should be immediately disbursed to HNP, with Plaintiffs' $1,011,505.66 continuing to be held by the Clerk of Court until a final determination of the merits on this case.

19. Plaintiffs "vehemently" objected to this after the fact change, which undermined the entire framework agreed upon by the parties. Plaintiffs believe that the evidence in this case will prove that the damages they have suffered may total more than Twenty-Five Million Dollars ($25,000,000.00).

20. Plaintiffs only agreed to close the sale of Hawks Landing and deposit the Funds with the Clerk of Court because the Funds would be protected from dissipation and would be available to compensate them for their losses. If any portion of the Funds was disbursed to HNP at closing or thereafter, HNP would immediately make off with the Funds and any judgment in favor of Plaintiffs on the merits of the claims would be hollow.

21. Plaintiffs made clear to the Court that if there was any possibility that the Funds with the Clerk of Court would be released to HNP prior to a merits ruling on the underlying action, Plaintiffs would have never closed the sale for Hawks Landing.

22. The Court determined that the entirety of the Funds would remain in the Clerk of Court as agreed to by the parties during the hearing and as reflected in the Order submitted by counsel for the parties that same day.

23. In complete reliance upon the agreement between the parties evidenced by the Court's April 7, 2025, Order, Plaintiffs proceeded to close the sale of the Property to the new buyer —RM Hawks Landing, LLC— on April 8, 2025, and deposited the full $21,894,377.07 with the Clerk of Court.

24. I was the person who directed the deposit of $21,894,377.07 into the Clerk of Court for Catawba County.

25. HNP is a single purpose Missouri limited liability company which is managed and controlled by Dave Johnson, the Chairman and CEO of Maxus Realty Trust, Inc. who resides and operates in Kansas City, Missouri.

26. HNP was formed only to purchase the Loan and prosecute Loan-related litigation. Since the Hawks Landing property sold, HNP has not engaged in any other activity (other than litigation between these parties and their affiliates).

27. The North Carolina Business Court's Order of March 5, 2026, directs the release of all Funds being held by the Catawba County Clerk of Court to HNP, including Plaintiffs' $1,011,505.66 and per diem interest of $12,116.74, sums deposited above HNP's payoff amount.

28. Once the Funds being held by the Clerk of Court of Catawba County are released to HNP, all of the Funds – including Plaintiffs' $1,011,505.66 and per diem interest of $12,116.74 - will be removed from the state of North Carolina and completely dissipated.

29. Once the Funds are dissipated, the Plaintiffs in this case will be irreparably harmed as they will have lost their $1,023,622.40 and will have also lost their ownership of Hawks Landing, which was sold in reliance that the Funds would be held and protected pending a merits determination in this case.

30. If not for the April 7, 2025, Preliminary Injunction Order, which ordered the Funds to be deposited pending a merits ruling, the Plaintiffs would not have closed the sale of Hawks Landing and would have instead refinanced the HNP Loan and retained title and ownership over Hawks Landing.

31. I hereby confirm that the bond is ready to issue and I have already wired $43,109.00 to Glankler Brown, PLLC for use as payment of the bond premium to Platte River Insurance Company for the $1,626,782.20 bond.

32. The $43,109.00 is being paid by me, through Valor Residential Group, LLC, and is not a loan to the Plaintiff entities.

I declare under penalty of perjury under the laws of North Carolina that the foregoing is true and correct.

ELIEZER MEISELS

Date: 4/17/26